**NOT FOR CITATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PAUL CASAREZ,<br><br>        Plaintiff,<br>   v.<br><br>COUNTY OF SAN BENITO and SHERIFF CURTIS HILL,<br><br>        Defendants.<br>_____/ | No. C04-03658 HRL<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF SAN BENITO'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT HILL'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket No. 36]** |

On January 3, 2006, this court heard the motion for summary judgment filed by defendant Sheriff Curtis Hill ("Hill") and for partial summary judgment filed by defendant County of San Benito ("County").[1] Plaintiff Paul Casarez opposed the motion.[2] Having considered the papers filed by the parties, as well as the arguments of counsel, the court issues the following order.

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

[2] Plaintiff did not file his opposition by December 6, 2005 as per this court's November 15, 2005 order. The court has accepted and considered the papers submitted, but it does not condone the failure to make timely filings and warns against future non-compliance.

## I. BACKGROUND

In this civil rights action, plaintiff claims that during three periods of incarceration at the San Benito County Jail ("Jail"), he was denied proper medical care and accommodations for a below-knee amputation of his right leg. He also claims that the floors of the disabled persons' shower at the Jail were slippery when wet and presented a dangerous condition for amputee inmates like himself. Except as otherwise indicated, the following facts are not materially disputed:

In 1987, plaintiff was involved in a motorcycle accident resulting in the below-knee amputation of his right leg. He wears a prosthesis, and the amputation site requires care and hygiene.

The County owns and operates the Jail. Plaintiff was incarcerated at the Jail on three separate occasions in 2002 and 2003 for the purpose of serving a sentence imposed after a criminal conviction. He was incarcerated for an accumulated total of approximately 29 days as follows: (1) from October 4, 2002 to October 15, 2002; (2) from June 20, 2003 to June 28, 2003; and (3) from September 9, 2003 to September 16, 2003.

Plaintiff did not take showers with the general inmate population. Instead, he was given access to a disabled persons' shower. Because the disabled persons' shower facility is located in front of the booking room, a jail staffer was required to escort plaintiff to and from his showers.

Plaintiff claims that in order for him to maintain good hygiene at the amputation site, it is medically necessary for him to shower twice daily – once in the early morning upon rising and again later in the day as needed. There is no dispute that plaintiff was sometimes allowed to take morning showers, although plaintiff complains that those showers, when allowed, were generally in the late morning. Further, plaintiff contends that he usually was not permitted to take a second shower during the balance of the day, and sometimes went without any shower at all. He claims that as a result, he developed rashes and sores at the amputation site.

Plaintiff also claims that defendants failed to adapt the Jail's shower facilities to permit him to shower safely. He alleges that the Jail's shower floors presented a dangerously slippery

1  condition for him, resulting in his June 28, 2003 slip-and-fall accident in which he says he
2  suffered back and knee injuries requiring protracted medical treatment. According to plaintiff,
3  the accident occurred when he attempted to adjust the water nozzle while showering in the
4  disabled persons' shower.

5  Plaintiff filed the instant lawsuit on August 27, 2004. His original complaint alleged
6  claims under (1) 42 U.S.C. § 1983, (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C.
7  § 12181, *et seq.*, and (3) the California Unruh Civil Rights Act. On August 2, 2005, defendants
8  moved for summary judgment as to the first and third claims for relief. However, defendants
9  later withdrew that motion when the parties stipulated to the dismissal of plaintiff's first and
10 third claims and to the filing of an amended complaint.

11 In his amended complaint, plaintiff asserts an ADA claim under 42 U.S.C. § 12101, *et*
12 *seq.* against both defendants, seeking damages for alleged disability discrimination. He also
13 asserts a state law claim against defendant Sheriff Hill for dangerous condition of public
14 property under Cal. Gov. Code § 830, *et seq*.

15 The County now moves for partial summary judgment as to the ADA claim on the
16 ground that plaintiff is not entitled to any monetary damages because he cannot show that the
17 County acted with deliberate indifference. Defendant Hill moves for summary judgment as to
18 the ADA claim on the ground that he cannot be sued in his individual capacity under the ADA.
19 Additionally, Hill also moves for summary judgment as to the state law claim on the grounds
20 that (1) there is no evidence indicating that he had notice of any alleged defect or dangerous
21 condition in the Jail's shower facilities; and (2) he is immune from suit under Cal. Gov. Code §
22 820.2.

**II. LEGAL STANDARD**

24 A motion for summary judgment should be granted if there is no genuine issue of
25 material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.
26 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears
27 the initial burden of informing the court of the basis for the motion, and identifying portions of
28 the pleadings, depositions, answers to interrogatories, admissions, or affidavits which

3

demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See* FED. R. CIV. P. 56(e); *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* Further, it must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.23d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact."). A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

## III. DISCUSSION

**A.  Plaintiff's ADA Claim**

**1.  Sheriff Hill**

Plaintiff concedes that defendant Hill cannot be sued in his individual capacity under the ADA and has withdrawn the ADA claim as to him. *See Vinson v. Thomas*, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (holding "that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) ("Title II provides disabled individuals redress for discrimination by a 'public entity.' . . . That term, as it is defined within the statute, does not include individuals.") Accordingly, Hill's motion for summary judgment is denied as moot.

4

**2.   County of San Benito**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  For purposes of the instant motion, the County apparently does not dispute that plaintiff is a "qualified individual with a disability"[3] or that the Jail is a "public entity"[4] within the meaning of the ADA.  Further, at the hearing, defense counsel stated that there may be an issue as to whether the accommodations provided to plaintiff were reasonable. Nonetheless, it contends that plaintiff cannot, as a matter of law, obtain monetary damages under the ADA because there is no evidence suggesting that the County acted with "deliberate indifference" to his claimed need for accommodation.

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  To establish intentional discrimination under the ADA, the plaintiff must show that defendants acted with "deliberate indifference." *Id*. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139.

The first element of the deliberate indifference test is satisfied "[w]hen the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation) . . . ." *Id*. at 1139.  The plaintiff bears the burden

---

[3]   The ADA defines the term "qualified individual with a disability" as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxilliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

[4]   The ADA definition of "public entity" includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(A), (B).

5

1  of establishing an ADA violation, and he is obliged to identify specific, reasonable and
2  necessary accommodations that the defendant failed to provide. *Id*. (citing *Memmer v. Marin*
3  *County Courts*, 169 F.3d 630, 633 (9th Cir. 1999)). "[I]n order to meet the second element of
4  the deliberate indifference test, a failure to act must be a result of conduct that is more than
5  negligent, and involves an element of deliberateness." *Id*. at 1139.

6  In the instant case, plaintiff acknowledges that the County did a number of things to accommodate his disability. Indeed, in his opposition, he does not dispute, address or raise any issues as to the County's evidence indicating that:

- During his first two incarcerations, he had an extra mattress which he used to elevate his leg (albeit the mattress apparently was provided by another inmate rather than by Jail staff). (Serverian Decl., Ex. A (Casarez Depo., 78:22-25, 79:25-80:14));

- Plaintiff was permitted to bring creams and bandages with him into his cell and was permitted to see a doctor on at least two occasions to examine his leg. (Serverian Decl., Ex. A (Casarez Depo., 74:17-75:7); Ex. B (Casarez Depo. 148:17-149:4), Ex. C (Turturici Depo. 15:4-20));

- Plaintiff was allowed to see a prosthetic specialist and to be seen by doctors (Severian Decl., Ex. A (Casarez Depo., 59:3-14), Ex. B (Casarez Depo., 144:19-145:7, 16-19); Ex. C (Turturici Depo., 31:25-32:19)); and

- After plaintiff's June 28, 2003 slip-and-fall, he was transported to the hospital for examination, and Jail officials worked to secure his early release from so that he could tend to his back injuries (Severian Decl., Ex. A (Casarez Depo., 58:17-59:2), Ex. B (Casarez Depo., 164:6-22), Ex. D (Escamilla Depo., 66:25-68:10)).

The only apparent dispute centers around (1) the County's alleged failure to provide plaintiff with sufficiently early and frequent daily showers and (2) the adequacy of the Jail's shower facilities. Plaintiff asserts that he "ha[s] a medical need to shower promptly after [he] awake[s] in the morning, and again during the day, in order to maintain proper hygiene with [his] amputated stump . . .." (Casarez Decl., ¶ 3; *see also* Adams Decl., Ex. 1, (Casarez Depo.,

6

1   67:18-68:21)).  As noted above, it is undisputed that plaintiff was permitted morning showers
2   on some occasions.  For example, during his second incarceration from June 20 to June 28,
3   2003, plaintiff was permitted to shower before noon on three or four occasions.  (Serverian
4   Decl., Ex. A (Casarez Depo. 91:3-12); Adams Decl., Ex. 2 (Escamilla Depo. 36:13-37:3)).
5   While it is not clear exactly when plaintiff took his showers,[5] there is also no apparent dispute
6   that plaintiff was not always permitted to take morning showers or showers twice daily.

7   Plaintiff also agrees that he requested, and was given, extra towels, blankets and chairs
8   to help him maneuver in the shower.  For example, the uncontroverted evidence indicates that
9   during his first incarceration, plaintiff requested extra blankets to minimize the slipperiness of
10  the shower floor, and Jail personnel granted his request that same day.  (*See* Casarez Decl., ¶ 4;
11  *see also* Adams Decl., Ex. 1 (Casarez Depo., 92:4-93:19, 147:16-148:4); Adams Decl., Ex. 5).
12  Plaintiff agreed that after he was given the requested blankets and towels, he was able to take a
13  shower without falling or injuring himself.  (Adams Decl., Ex. 1 (Casarez Depo., 94:12-16)).
14  He further acknowledges that when he was permitted to shower during his third incarceration,
15  Jail staff did provide him with the extra chairs and blankets or towels that he requested.
16  (Casarez Decl., ¶ 6).  However, there apparently is also no dispute that Jail personnel did not
17  provide extra towels, blankets and chairs for plaintiff for all of his showers.

18  The County argues that there is no issue as to deliberate indifference because plaintiff
19  acknowledges that the County did not act in bad faith or with malice.  However, the County has
20  not convincingly demonstrated that bad faith or malice is required in order to find that it acted
21  with deliberate indifference.  Indeed, in *Duvall*, the Ninth Circuit determined that "deliberate
22  indifference," and not "discriminatory animus," is the appropriate test for determining whether
23  there has been intentional discrimination.  *Duvall*, 260 F.3d at 1138.

---

26  [5]  The record presented indicates that except for inmates in administrative segregation, all inmates are generally permitted one shower per day, and those showers are not usually documented.  (Serverian Decl., Ex.C (Turturici Depo. 52:9-11, 18-21)). Consequently, other than his June 28, 2003 slip-and-fall, there apparently is no documentation of when plaintiff took his showers at the Jail.  (Serverian Decl., Ex. D (Escamilla Depo. 37:6-15)).

7

Plaintiff agrees that if *Duvall* did not require the County to conduct a fact-specific inquiry as to a reasonable accommodation, then the County's conduct might be characterized as merely negligent. However, and notwithstanding the County's occasional acquiescence to his specific requests for accommodation, plaintiff argues that there is sufficient evidence to raise a triable issue as to deliberate indifference because the County did not conduct any investigation through which it might have determined that other accommodations – namely, non-skid tape, rubber matting and the use of the Jail's hand-held showerhead – would have been reasonable. Here, he contends that his requested extra towels, blankets and chairs were not reasonable accommodations and were, at best, awkward solutions.

The Ninth Circuit describes a public entity's duty on receipt of a request for accommodation as follows:

> [A public entity] is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation, and we have provided the criteria by which to evaluate whether that investigation is adequate. '[M]ere[] speculat[ion] that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary.' . . . Furthermore, the Attorney General's regulations require the public entity to 'give primary consideration to the requests of the individual with disabilities when determining what type of auxiliary aid and service is necessary. . . . Accordingly, a public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable. Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course.

*Id.* at 1139. This court is not prepared to conclude, as a matter of law, that acquiescing to a disabled person's requests vitiates the need to conduct an investigation as to a reasonable accommodation. However, the only question before this court on the instant motion is whether there is sufficient evidence to create a triable issue that the County acted with deliberate indifference in providing the accommodations (reasonable or not) that it did. Although plaintiff

8

1  has presented evidence indicating that Jail personnel, including Under Sheriff[6] Turturici and
2  Sergeant Escamilla, were aware of his stated need for a morning shower and showers twice
3  daily, he has cited no evidence indicating that defendants were aware of his claimed need for an
4  *early* morning shower.  Indeed, the testimony he cites indicates that there was no discussion as
5  to a specific time in the morning for plaintiff's first shower.  (*See* Adams Decl., Ex. 2
6  (Escamilla Depo., 34:6-36:6); Ex. 3 (Turturici Depo., 33:25-34:18)).  Moreover, the instant case
7  does not present a situation where the County provided "just any accommodation"; rather, the
8  record indicates that it provided plaintiff with the very accommodations he requested.

9  Further, plaintiff argues that the County's failure to provide him with extra blankets,
10  towels and chairs for all of his showers is sufficient evidence to create a triable issue of
11  deliberate indifference.  However, he has not cited any evidence indicating whether the
12  County's admitted failure to do so was due to some deliberate action or inaction or whether it
13  was attributable to mere negligence.

14  At the same time, however, there is sufficient evidence to create a triable fact issue as to
15  whether the County acted with deliberate indifference in not providing plaintiff the use of the
16  Jail's hand-held showerhead and in failing to provide him with morning showers and showers
17  twice daily.  Here, the County presents evidence indicating that morning showers were not
18  always possible because (1) inmates were typically processed in the booking area for court
19  appearances at that time; and (2) plaintiff would sometimes not want to take a shower when he
20  was called.  (Serverian Decl., Ex. C (Turturici Depo. 34:22-38:17).  Further, the County has
21  presented evidence indicating that the showerhead was never offered to plaintiff because the
22  Jail has a policy of offering that showerhead only to wheelchair-bound inmates out of a concern
23  that the showerhead's flexible hose poses a suicide risk.  (Serverian Decl., Ex. E (Hill Depo.,
24  59:11-60:1)).  Additionally, the County asserts that it was reasonable for Jail staff to assume
25  that plaintiff was better off without the hand-held showerhead so that he could have both hands
26  free to balance himself in the shower.

---

[6] The record indicates that at the time of the pertinent events, Turturici was a lieutenant, but has, in the last several months, been appointed Under Sheriff.  (Adams Decl., Ex. 4 (Hill Depo., 15:5-8)).

9

As noted above, plaintiff has presented evidence indicating that Jail staff were aware of his claimed need for two showers per day – one in the morning and one later in the day. (*See* Adams Decl., Ex. 2 (Escamilla Depo., 34:6-36:6); Ex. 3 (Turturici Depo., 33:25-34:18)). While it is not clear on which occasions plaintiff was unable to take a shower because he allegedly refused to take one when called, plaintiff's testimony suggests that there may have been times when Jail personnel called at odd times when he was sleeping. (*See* Adams Decl., Ex. 1 (Casarez Depo., 176:1-6)). Further, plaintiff has presented evidence indicating that Jail personnel were aware as early as his first incarceration of his concern about the slipperiness of the shower's wet tile floor. (*See* Casarez Decl., ¶ 4; *see also* Adams Decl., Ex. 1 (Casarez Depo., 92:4-93:19, 147:16-148:4); Adams Decl., Ex. 5). Moreover, there appears to be no dispute that Jail personnel were aware that the hand-held showerhead was available at the Jail. Further, there is no indication in the record presented that the County's assumption that plaintiff was better off without a hand-held showerhead was based upon anything other than speculation. *See Duvall*, 260 F.3d at 1139.

The County argues that its policies and practices, especially with respect to security matters, must nonetheless be given deference, citing *Bell v. Wolfish*, 441 U.S. 520 (1979) and *Turner v. Safely*, 482 U.S. 78 (1987). However, unlike *Bell* and *Turner*, the constitutionality of the Jail's security policies themselves are not in question here. In any event, the County has cited no authority indicating that deference to its policies and decisions is absolute, and defense counsel acknowledged at the hearing that the Jail is not above the ADA.

Viewing the record in the light most favorable to plaintiff, there is at least a question as to whether the County acted with deliberate indifference in failing to always provide morning showers and showers twice daily or to offer plaintiff the use of the hand-held showerhead.

**B.     Plaintiff's Claim for Dangerous Condition of Public Property (Cal. Gov. Code § 830, *et seq.*)**

Plaintiff contends that Hill is liable under Cal. Gov. Code § 830, *et seq*. for the injuries sustained in his June 28, 2003 slip-and-fall accident. He claims that the Jail's disabled persons' shower facilities are dangerous because they contain tile floors which are slippery when wet and, further, they lack a hand-held showerhead. Hill, who has been Sheriff since January 1999, argues that he is entitled to summary judgment because (1) there is no evidence demonstrating that he had any notice of an alleged dangerous condition of the Jail's shower facilities; and (2) he is, in any event, entitled to immunity from suit under Cal. Gov. Code § 820.2 for the decision not to have a hand-held showerhead installed.

Under California law, a "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Cal. Gov. Code § 830(a). On the instant motion, Hill does not challenge whether wet tile floors and lack of a hand-held showerhead constitute a "dangerous condition." The crux of his motion appears to be that even assuming a "dangerous condition" existed, he had no notice of it.

Indeed, there apparently is no dispute that Hill had no actual notice of the alleged dangerous condition presented by the Jail's disabled persons' shower. "A public employee had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 840.2 if he had actual personal knowledge of the existence of the condition and knew or should have known of its dangerous character." Cal. Gov. Code § 840.4(a). Here, Hill points to the annual grand jury reports from 2001-2004 which show that the Jail's shower facilities were consistently maintained in good condition. (*See* Escamilla Decl., Exs. F-I; *see also* Serverian Decl., Ex. E (Hill Depo., 39:5-18)). Hill also testified that (1) he has not heard of any complaint that any shower floor is dangerously slippery for inmate amputees; (2) he is not aware of anyone who complained about any amenity (or lack thereof) in the disabled persons' shower; (3) he is not aware of anyone, before June 2003, who sustained injuries using the disabled

11

1  persons' shower; (4) before 2003, no one told him that the floor of the disabled persons' shower
2  was too slippery or hazardous in any way, (5) before 2003, no one told him that there was any
3  problem with the bench in the disabled persons' shower; and (6) before the instant lawsuit was
4  filed, no one told him that there was any problem with the shower nozzle in the disabled
5  persons' shower.  (*See* Serverian Decl., Ex. E (Hill Depo., 73:17-22, 81:4-7, 81:11-82:5)).

Nevertheless, plaintiff argues that there is a genuine issue of material fact as to whether Hill had constructive notice of the alleged dangerous condition of the Jail's shower facilities.  In order to establish constructive notice, a plaintiff must show:

> (1) that the public employee had the authority and it was his responsibility as a public employee to inspect the property of the public entity or to see that inspections were made to determine whether dangerous conditions existed in the public property;
>
> (2) that the funds and other means for making such inspections or for seeing that such inspections were made were immediately available to the public employee, and
>
> (3) that the dangerous condition had existed for such a period of time and was of such an obvious nature that the public employee, in the exercise of his authority and responsibility with due care, should have discovered the condition and its dangerous character.

Cal. Gov. Code § 840.4(b).  Plaintiff presents evidence indicating that Hill agreed that the annual grand jury reports do not address ADA compliance.  (Adams Decl., Ex. 4 (Hill Depo. 50:11-51:3, 82:16-83:1, 86:22-87:16)).  Whether the annual grand jury reports addressed compliance with the ADA would appear to be irrelevant for purposes of plaintiff's claim under Cal. Gov. Code § 830.

However, viewing the evidence in the light most favorable to plaintiff, the court finds that plaintiff has presented sufficient evidence to raise a triable issue as to whether Hill had constructive notice of the alleged dangerously slippery shower floors.  Here, plaintiff has presented evidence indicating that during his first incarceration in October 2002, Jail personnel were aware of his complaints that the floors of the disabled persons' shower were slippery and that he had slipped and fallen to his knees before June 28, 2003.  (*See* Casarez Decl., ¶ 4; *see also* Adams Decl., Ex. 1 (Casarez Depo., 92:4-93:19, 147:16-148:4)) and Ex. 5).  He also points to Hill's deposition testimony which demonstrates that Hill has overall responsibility for the

12

1  care and custody of the inmates at the Jail, albeit he delegates to his subordinates
2  responsibilities for inspecting and maintaining the Jail facilities. (*See* Adams Decl., Ex. 4 (Hill
3  Depo., 14:4-17:15, 45:1-12, 51:13-52:25, 75:2-76:9)). Hill also testified that he has
4  accompanied his command staff on Jail inspections in the past, but that he has not done so for
5  the past two or three years and has only done so four or five times since becoming Sheriff and
6  relies upon his staff to take care of such matters. (*Id.* (Hill Depo., 75:2-22)).

Defendant Hill nevertheless contends that, under Cal. Gov. Code § 820.2, he is immune from suit for the decision not to maintain hand-held showerheads in the disabled persons' shower. Under Section 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code. § 820.2. Hill testified that when the Jail was built, a policy decision was made not to have a hand-held shower nozzle permanently installed in the shower facilities to prevent or reduce the risk that inmates would use the shower hose in suicide attempts. (Serverian Decl., Ex. E (Hill Depo., 59:11-60:1)). Hill's cited testimony further indicates that the decision to maintain that policy was a discretionary act, in which he weighed what he believed to be the rare need for wheelchair-bound inmates for a hand-held showerhead against what he says is the ever-present potential for suicide attempts by inmates. (*Id.*) As this was a discretionary act, the court agrees that Hill is immune from suit to the extent plaintiff contends that his injuries are attributable to the decision not to have hand-held showerheads installed. *See Taylor v. Buff*, 172 Cal. App.3d 384, 218 Cal.Rptr. 249 (1985) (concluding that sheriff was immune from suit under section 820.2 for the policy decision not to use limited funds to replace cell locks resulting in injuries to an inmate).

### IV.  ORDER

Based on the foregoing, IT IS ORDERED THAT:

1.  Because plaintiff has withdrawn his ADA claim against defendant Hill, defendant Hill's summary judgment motion as to that claim is DENIED as MOOT.

2.  The County's motion for partial summary judgment as to plaintiff's claim for monetary damages under the ADA is GRANTED IN PART AND DENIED IN PART. The

13

motion is GRANTED as to the County's failure to provide non-skid tape or rubber matting and the failure to consistently provide extra towels, blankets and chairs. However, the motion is DENIED as to the County's failure to offer the use of the Jail's hand-held showerhead or to consistently permit morning showers and showers twice daily.

   3. Defendant Hill's motion for summary judgment as to plaintiff's claim for dangerous condition of public property under Cal. Gov. Code § 830, *et seq.* is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED insofar as plaintiff attributes his injuries to the decision not to install a hand-held showerhead in the disabled persons' shower. The motion is also GRANTED as to Hill's actual notice of the alleged "dangerous condition" of the Jail's shower facilities. However, the motion is DENIED as to whether Hill had constructive notice of the alleged "dangerous condition" of the Jail's shower facilities.

Dated: January 12, 2006

            /s/ Howard R. Lloyd
            HOWARD R. LLOYD
            UNITED STATES MAGISTRATE JUDGE

**5:04-cv-3658 Notice will be electronically mailed to:**

Michael Edward Adams equitist@earthlink.net

Michael C. Serverian mserverian@rllss.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.